UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-233-FDW
(3:09-cr-172-FDW-1)

| | |
|---|---|
| JAMES THOMAS TERRELL, III, )<br>)<br>)<br>Petitioner, )<br>)<br>) | |
| ) | **ORDER** |
| vs. )<br>) | |
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Respondent. )<br>_____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 7).

**I. BACKGROUND**

On October 21, 2009, the Grand Jury for the Western District of North Carolina issued a five-count superseding bill of indictment, charging Petitioner with conspiracy to possess with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846 (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two); two counts of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Counts Three and Five); and conspiracy to possess with intent to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846 (Count Four). (Criminal Case No. 3:09-cr-172, Doc. No. 13: Superseding Bill of

1

Indictment).  Consistent with 21 U.S.C. § 851, the Government filed a notice of intent to seek enhanced penalties under the Controlled Substances Act based on Petitioner's prior 1997 conviction for felony possession of marijuana in North Carolina Superior Court.  (Id., Doc. No. 7: Information).  Petitioner received a sentence of six to eight months on the 1997 conviction.  See (Id., Doc. No. 7-1).

Prior to trial, the Government and Petitioner entered into a plea agreement, in which Petitioner agreed to plead guilty to both drug conspiracy charges and both money laundering conspiracy charges.  (Id., Doc. No. 16 at 1: Plea Agreement).  In exchange, the Government agreed to dismiss the firearm charge.  (Id. at 1).  The parties also agreed that the cross-reference for second-degree murder under the United States Sentencing Guidelines applied in Petitioner's case, pursuant to §§ 2D1.1(d)(1) and 2A1.2 of the guidelines.  (Id. at 2).  Notwithstanding the application of the second-degree murder cross reference, the parties agreed "that a sentence of thirteen (13) years [was] the appropriate sentence in this case."  (Id. at 2).  The parties entered into the agreement pursuant to Rule 11(c)(1)(C) of the Rules of Criminal Procedure.  As a result, the parties' recommendation of a thirteen-year sentence was binding on the Court, and if the Court did not accept the recommended sentence, Petitioner would be relieved of his obligation to plead guilty.  (Id.).

In conjunction with the plea agreement, the parties submitted a factual resume setting forth the material facts underlying Petitioner's convictions.  (Id., Doc. 17: Factual Resume).  The factual resume also recited the key facts supporting the second-degree murder cross reference, providing as follows:

> On or about October 28, 2005, at his residence in Huntersville, within Mecklenburg County, TERRELL distributed a quantity of cocaine to Wyatt Rivens in exchange for U.S. currency.  On or about October 29, 2005, at

> TERRELL'S residence in Huntersville, TERRELL and Rivens argued over the quality of the previously-distributed cocaine. This argument later escalated into a physical altercation. During this altercation at his residence, TERRELL shot and killed Rivens with a 9mm handgun. On the night of October 29, 2005, TERRELL disposed of Rivens' body off Lowell Spencer Mountain Road in Gaston County, North Carolina, within the Western District of North Carolina.

(Id., Doc. 17: Factual Resume). The factual resume was signed by all parties, including Petitioner. (Id.). As part of the plea agreement, the district attorneys in the districts with jurisdiction over the killing of Rivens submitted letters stating that they would not pursue Petitioner for prosecution in state court for the murder. (Id., Doc. No. 16-1).

On November 2, 2009, this Court conducted Petitioner's plea hearing, pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (Id., Doc. No. 46: Tr. of Plea & R. 11 Hrg.). At the outset of the hearing, the Court explained the impact of the Rule 11(c)(1)(C) plea agreement as follows:

> [T]his Plea Agreement sets a specific sentence that you, your attorney and the government believe is appropriate for the disposition of this case, and that specific sentence would be binding on this Court if the Court were to accept the Plea Agreement. But if the Court would find that specific sentence insufficient for the criminal conduct to which you're pleading, the Court would have to disregard the whole Plea Agreement and allow you the opportunity to withdraw your plea and you can proceed to trial or negotiate a different Plea Agreement with the United States.

(Id. at 6). Following the Court's explanation, Petitioner acknowledged that he understood. (Id.). During its summary of the plea agreement, the Government explained that the parties agreed that the second-degree murder cross reference applied, but that a sentence of thirteen years was the appropriate disposition in the case. (Id. at 9). The Government also read the factual resume, including the facts related to the second-degree murder cross reference. (Id. at 26-27).

Following the Government's summary, Petitioner acknowledged that he had read the factual resume and signed it, and that he did not disagree with or have anything to add to the

3

facts set forth therein. (Id. at 27-28). Petitioner affirmed that he was "in fact, guilty," and, at the conclusion of the hearing, this Court found that Petitioner's plea was knowingly and voluntarily made and accepted it. (Id. at 39-40).

Prior to sentencing, the probation officer prepared Petitioner's presentence report, concluding that Petitioner faced a guidelines range of 235 to 293 months in prison based on a total offense level of 37 and a criminal history category of II. (Id., Doc. No. 36 at 14: PSR). Consistent with the parties' agreement, the probation officer calculated Petitioner's base offense level by reference to the second-degree murder guideline. (Id. at 8). The probation officer also noted that Petitioner faced a mandatory minimum of ten years in prison for the drug conspiracy charges, in light of the notice of Petitioner's prior conviction for a felony drug offense filed by the Government. (Id. at 14). The probation officer explained that the parties had entered into a binding plea agreement in which they recommended a thirteen-year sentence, explaining that "[h]ad the defendant not entered into this agreement, he would have been subject to a guideline custody range of 235 to 293 months plus a consecutive sentence of at least 5 years imprisonment for [the § 924(c) charge]," which the Government had agreed to dismiss. (Id.).

At the outset of his sentencing hearing held on April 13, 2011, Petitioner indicated that he wished to withdraw from the binding plea agreement, claiming that defense counsel had not explained the law of self-defense to him before he entered into the agreement. (Id., Doc. 47 at 6-13: Tr. of Sentencing Hrg.). Petitioner stated that, based on his understanding of self-defense, he "should not be held accountable to the second degree cross-reference." (Id. at 13). Petitioner explained that he "want[ed] to plead guilty to the charge of conspiracy, the drug conspiracy and the money laundering," but that he did not want to be bound by the plea agreement, which stipulated to the second-degree murder cross reference and thirteen-year sentence. (Id.).

4

In response, the Government stated that it did not oppose allowing Petitioner to withdraw from his binding plea agreement so that he could argue about the application of the second-degree murder cross reference and the appropriate sentence. (Id. at 13-14). The Government and this Court explained that withdrawing from the binding plea agreement would have consequences for Petitioner, including that the Government would no longer dismiss the § 924(c) charge and would consider adding additional charges, that Petitioner may receive a much higher sentence within the guidelines range if the Court found that the second-degree murder cross reference properly applies, and that the state district attorneys would no longer provide Petitioner immunity for the killing of Rivens. (Id. at 14-18; 23-26). After explaining the options and associated consequences, the Court took a recess to allow Petitioner to confer with his counsel before he decided whether he wished to withdraw from the plea agreement. (Id. at 30; 33; 36).

When the hearing resumed, the Court and Petitioner had the following exchange:

THE COURT: . . . . Do you feel that you understand your situation?

DEFENDANT TERRELL: Yes, sir.

THE COURT: All right. And do you feel -- do you have any further questions for me or [defense counsel]?

DEFENDANT TERRELL: No, sir.

THE COURT: All right. Since you understand your situation and you don't have any further questions, have you made a decision? Would you like to proceed on your current Plea Agreement or would you like to withdraw from that Plea Agreement and run the risk that I've discussed with you earlier?

DEFENDANT TERRELL: Proceed.

THE COURT: Proceed on the current Plea Agreement that's dated October 30th, 2009. Correct?

DEFENDANT TERRELL: Yes, sir.

(Id. at 37). After Petitioner affirmed that he wished to proceed under the plea agreement, the Court proceeded with the sentencing hearing, ultimately sentencing Petitioner to 156 months in prison, consistent with the parties' agreement. (Id. at 56).

This Court entered judgment on May 4, 2011, and Petitioner appealed. (Id., Doc. 38: Judgment; Doc. No. 40: Notice of Appeal). The Fourth Circuit affirmed in an unpublished, per curiam opinion dated January 5, 2012. United States v. Terrell, 460 F. App'x 278 (4th Cir. 2012). Petitioner timely filed his motion to vacate by delivering it to prison authorities for mailing on April 13, 2012. (Doc. No. 1-16). In the motion to vacate, Petitioner contends that he received ineffective assistance of counsel during plea negotiations.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.

See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

As noted, in his petition, Petitioner claims that he received ineffective assistance of counsel during plea negotiations. In support, he cites two alleged deficiencies in his pre-plea representation: first, that defense counsel never discussed the possibility of presenting an affirmative defense of self-defense to the second-degree murder cross reference; and, second, that defense counsel should have foreseen the change in the law created by the Fourth Circuit's en banc decision in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), and that counsel should have advised Petitioner that the § 851 enhancement filed by the Government was infirm. Petitioner asserts that if he had been properly advised on these issues, he would not have entered into the binding plea agreement.

With respect to Petitioner's first claim, Petitioner is unable to show that defense counsel's alleged failure to explain the possibility of asserting self-defense resulted in prejudice. Petitioner contends that he would not have entered into the binding plea agreement if he had known that he

7

had a potential defense to the second-degree murder cross reference. Petitioner contends that, instead, he would have contested the application of the cross reference and argued for a lower sentence. Petitioner ignores the fact, however, that this Court afforded him the opportunity to do just that at his sentencing hearing. After Petitioner claimed that he had been misadvised about the availability of asserting self-defense, this Court allowed Petitioner the option, without opposition from the Government, of withdrawing from his plea agreement. After conferring with counsel and then assuring this Court that he fully understood the situation, Petitioner elected to proceed under the agreement. Because Petitioner declined the Court's invitation to withdraw from the plea agreement after he was fully informed regarding all available defenses, Petitioner is unable to show, as he must, that he would not have pled guilty but for the alleged deficient performance in his pre-plea representation. Accordingly, he is unable to establish prejudice, and his claim fails.

Petitioner is also unable to establish ineffective assistance of counsel based on his contention that his counsel should have foreseen the change in law brought by Simmons. In Simmons, the Fourth Circuit held that in order for a prior felony conviction to serve as a predicate offense under the mandatory minimum provisions of the Controlled Substances Act, the individual defendant must have been convicted of an offense for which he could have received a sentence of more than one year in prison. 649 F.3d at 242-43. In so doing, the Fourth Circuit overturned its earlier decisions in United States v. Jones, 195 F.3d 205 (4th Cir. 1999), and United States v. Harp, 406 F.3d 242 (4th Cir. 2005), in which the court had held that an offense is punishable by more than one year in prison as long as any defendant could receive a term of imprisonment of more than one year upon conviction for that offense. See Simmons, 649 F.3d at 247.

Petitioner's ineffective assistance of counsel claim fails. At the time of Petitioner's sentencing Jones and Harp were still the prevailing law in this circuit. Thus, even if counsel had objected to the sentence enhancement, any objection would have been overruled, and the outcome in sentencing would have remained the same. Accord United States v. Webb, 452 F. App'x 316, 318 (4th Cir. 2011) (counsel's failure to anticipate Simmons and object to the sentencing enhancement was not ineffective assistance of counsel because at the time of the petitioner's sentencing Harp and Jones were still good law). In sum, Petitioner has not shown ineffective assistance of counsel based on counsel's failure to object to the § 851 sentencing enhancement.

The Court also notes that, in any event, although this Court concluded that Petitioner faced a mandatory minimum sentence of no less than ten years nor more than life based on Petitioner's conviction for a prior felony drug offense, the Court did not impose the enhanced sentence under the Controlled Substances Act. Instead, the Court properly sentenced Petitioner to thirteen years in prison pursuant to the parties' recommendation in the binding plea agreement. Thus, there is no indication that this Court was inclined to sentence Petitioner lower or that it felt constrained by the ten-year mandatory minimum. Accordingly, regardless of whether this Court erroneously relied on a state court conviction that would no longer be considered a felony after Simmons, any error had no impact on Petitioner's ultimate sentence. In sum, this part of Petitioner's ineffective assistance of counsel claim is without merit.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)..

Signed: September 12,

Frank D. Whitney
Chief United States District Judge